UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DENNIS GARRY WHITTIE,

          Plaintiff,

v.

          Case No. 03-60219
          HON. MARIANNE O. BATTANI

CITY OF HAMTRAMCK, et al.,

          Defendants.
_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART THE PARTIES' CROSS MOTIONS FOR SUMMARY JUDGMENT**

**I.    INTRODUCTION**

Before the Court is Defendants' Motion for Summary Judgment (Doc. #28) and Plaintiff's Motion for Partial Summary Judgment (Doc. #26). Defendants request dismissal of Plaintiff's Complaint while Plaintiff requests summary judgment on his First Amendment retaliation claim. For the reasons set forth below, the Court **GRANTS** in part and **DENIES** in part both motions.

**II.    STATEMENT OF FACTS**

This case requires the Court to weigh a police department's right to maintain discipline against a police officer's First Amendment right to discuss matters of public concern. The Hamtramck Police Department is composed of 42 police officers. Plaintiff Dennis Whittie began his employment with the department in August of 2001. Whittie refers to himself as a "street-cop" who has received exemplary reviews for the performance of his police duties from both the police department and the public. The appropriateness of Whittie's non-police activities,

-1-

however, is hotly contested.

In his spare time, Whittie maintains an active interest in municipal politics. In the Spring of 2003, he sent correspondence to city, county, and state authorities reporting that Defendant Melvin Turner held two municipal positions in violation of the Michigan Incompatible Offices Act.[1] Later that year, Whittie discovered that Steve Shaya, Hamtramck's building superintendent, had concealed the fact that he was a convicted felon and was thereby employed in contravention of Hamtramck's charter. Whittie then launched a private investigation into Shaya's activities that culminated in a report ("the Shaya report") that he also submitted to a variety of government officials. In April of 2003, Whittie created a website called "Inside Hamtramck" which he continues to maintain. The website publishes information and commentary on a variety of municipal issues, including Whittie's opinions about Doyle, Turner, and Shaya.

Whitte alleges that city officials retaliated against him for exposing Turner and Shaya's alleged misconduct. On July 18, 2003, then Deputy Chief Doyle sent Whittie a memorandum indicating that Shaya had filed a citizen's complaint against him and that the department was consequently conducting an investigation into his preparation of the Shaya report. The final line of the memorandum indicated that "[a]ny communications regarding this matter are not to be released to any civilian personnel without permission from the Director of Public Safety." Defs.' Mtn. Br., Ex. 7. Several days later, Whittie put a scanned copy of the memorandum on the Inside Hamtramck website accompanied by an invective against Doyle, Turner, and Shaya. Subsequently, Doyle and Turner began formal disciplinary proceedings against Whittie.

---

[1]Turner subsequently resigned from one of the positions.

-2-

On September 8, 2003, now Chief Doyle conducted the first disciplinary hearing. At the beginning of the meeting, Doyle gave a direct order to everyone present that anything discussed was "Department business" and was to remain strictly confidential. After the hearing, Doyle determined that Whittie violated three departmental rules: (1) Section 29- Public Statements and Appearances; (2) Section 2- Unbecoming Conduct; and (3) Section 31- Dissemination of Information. For these violations, Doyle suspended Whittie for ten days without pay. Whittie's union then filed a grievance and a demand for arbitration on his behalf. The arbitration was assigned to Shlomo Sperka who, after three days of hearings, determined that Defendants had a basis to discipline Whittie. Sperka specifically found that Whittie's critical statements of Turner and other city officials did not constitute protected speech. However, Sperka reduced the 10-day suspension to a written reprimand due to mitigating circumstances.

After the disciplinary hearing, Whittie sent an email to approximately 18 people that discussed the status of his website, the nature the charges asserted against him, the procedural history of the hearing, and his reaction. The email states, in part:

> I was told during this meeting that I 'have a first amendment right to free speech, but I do not have a right to be a police officer.' My letters to the state about the different scams going on in Hamtramck…were brought up and I was told that under department rules I am not allowed to criticize the city in any form publicly and that if I do I will most likely be terminated (if they do not terminate me this week already). It's odd how within the past 6 months a Sgt. and an officer both wrote letters to the paper criticizing the city and the police commissioner and no charges were filed against them. It is also odd that all this "discipline" was filed within 2 weeks after reporting DPW Sup. Steve Shaya as a convicted felon in violation of the charter. The chief kept stressing that "this has nothing to do with Shaya" but I believe the facts show much much differently.
>
> I was also told at this meeting that I am not allowed to contact my governor, state reps, city council, senators or congressman if that contact involves criticism of the Hamtramck Government because it's against dept rules…feels kinda like living in a totalitarianism world for me. I guess it's their position that once I put the badge

> on and swore to uphold the constitution that I waived all 1st amendment rights under it….

Defs.' Mtn. Br., Ex. 14. Doyle interpreted the email as a direct violation of the order he gave at the beginning of the disciplinary hearing. Accordingly, he initiated an investigation into Whittie's actions and issued charges for insubordination and for public dissemination of department information.

On October 3, 2003, Doyle held a second disciplinary hearing at which Whittie and his Union representative were given an opportunity to explain the email. Four days later, Doyle issued a letter terminating Whittie for ignoring his confidentiality order. Doyle emphasized:

> This total disregard for following the rules and regulations of the Department cannot be tolerated any further. The fact that Officer Whittie was just disciplined under similar circumstances speaks volumes. Officer Whittie apparently feels the rules and regulations of this Department do not apply to him. This undermines the entire organization.

Defs.' Mtn. Br., Ex. 18. Again, Whittie's union filed a grievance and requested arbitration. The arbitration was assigned to Stanley Dobry who found that the City of Hamtramck had just cause to terminate his employment. However, Dorby decided that the termination should be reduced to a 16-month suspension without pay or benefits due to certain mitigating factors. In compliance with this decision, Whittie returned to work on January 24, 2005.

**III.     STANDARD OF REVIEW**

Federal Rule of Civil Procedure 56(c) authorizes the Court to grant summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." There is no genuine issue of material

fact if there is no factual dispute that could affect the legal outcome on the issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). In other words, the movant must show he would prevail on the issue even if all factual disputes are conceded to the non-movant. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

IV.   ANALYSIS

    A.   **Collateral Estoppel and Res Judicata**

Throughout the briefing of this case, Defendants have placed significant weight on the two arbitrators' opinions. Defendants adamantly argue that the doctrines of collateral estoppel and res judicata bar Whittie from bringing this suit because he participated in the arbitrations performed pursuant to the police department's collective bargaining agreement with the officer's union. However, this argument has been rejected by the United States Supreme Court. In McDonald v. City of West Branch, 466 U.S. 284, 290-91 (1984), the Court unequivocally held that "although arbitration is well suited to resolving contractual disputes...it cannot provide an adequate substitute for a judicial proceeding in protecting the federal statutory and constitutional rights that § 1983 is designed to safeguard." Therefore, according preclusive effect to the determinations of arbiters Dobry and Sperka "would severely undermine the protection of federal rights that [§ 1983] is designed to provide. Id. at 292 (footnote omitted).

Whittie's claim brought pursuant to the Whistleblower Protection Act likewise is not barred by the arbitration. In Hopkins v. City of Midland, 158 Mich. App. 361, 376 (1987), the Michigan Court of Appeals declined to accord preclusive effect to an arbitration of a public employment dispute that was performed pursuant to a collective bargaining agreement. The

court held that the public employee's Whistleblower Protection Act claim was not barred in a subsequent lawsuit "[i]n the absence of a clear agreement to arbitrate whistleblower claims" in the arbitration. Id. Because there was no express agreement to arbitrate Whittie's whistleblower claim, it is properly raised in the instant suit.

    **B.    First Amendment Claims**

        **1.    Qualified Immunity**

Qualified immunity is an affirmative defense that shields government officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "The entitlement is an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). The United States Supreme Court has set forth a two-prong test to determine whether an officer-defendant is entitled to qualified immunity. Saucier v. Katz, 533 U.S. 194, 200 (2001). The first prong requires the court to inquire whether the facts, viewed in the light most favorable to the plaintiff, "show the officer's conduct violated a constitutional right." Id. at 201. The court must "concentrate at the outset on the definition of the constitutional right and [then] determine whether on the facts alleged, a constitutional violation could be found..." Id. 207. If a constitutional violation could be found, the second prong requires the court to decide whether a reasonable official would, at the time the act was committed, understand that his conduct violated that right. Id. at 201. A government official will be entitled to immunity as long as the conduct does not amount to a violation of a clearly established right of which a reasonable person would have known. Harlow v. Fitzgerald, 457

U.S. 800, 818 (1982). A right is clearly established when "it would be clear to a reasonable [official] that his conduct was unlawful in the situation that he confronted." Saucier, 533 U.S. at 202.

Defendants contend that summary judgment should be granted in their favor because they are entitled to qualified immunity. Defendants assert that their involvement in the disciplinary proceedings did not violate any clearly established constitutional right. However, the Court finds that Whittie has produced sufficient evidence to resist summary judgment on the issue of qualified immunity. When viewed in Whittie's favor, the evidence indicates that Defendants sought to completely silence his whistleblowing activities by instituting two disciplinary hearing against him and by ultimately terminating him. As discussed below, these hearings were a direct reaction to the information Whittie published in the Shaya report, on his website, and in his email. Although Whittie was a police officer subject to the department's confidentiality policies, the law is clearly established that he had a First Amendment right, albeit limited, to inform the public about Shaya, Doyle, and Turner's alleged misconduct. Guercio v. Brody, 911 F.2d 1179, 1184 (6th Cir. 2000). Therefore, it would have been clear to a reasonable official that he could not retaliate against Whittie by categorically prohibiting him from contacting the press or any government official. Cameron v. Seitz, 38 F.3d 264, 272 (6th Cir. 1994).

### 2. Retaliation

In order to prevail on his First Amendment retaliation claims, Whittie must demonstrate "1) he engaged in protected conduct; 2) he suffered an adverse action which would deter a person of ordinary firmness from continuing to engage in the protected conduct; and 3) the adverse action was motivated at least in part by the protected conduct." Thaddeus-X v. Blatter,

175 F.3d 378, 394 (6th Cir. 1999).  See also Leary v. Daeschner, 349 F.3d 888 (6th Cir. 2003).

To show the speech at issue is constitutionally protected under the first step of this framework, Whittie must satisfy two additional standards as a public employee.  First, Whittie must demonstrate that his speech implicated a matter of public interest or concern.  Generally, it is appropriate to find that speech implicates a matter of public concern when it informs the community that a government entity has failed to discharge its governmental responsibilities or has engaged "actual or potential wrongdoing or breach of public trust."  Connick v. Myers, 461 U.S. 138, 148 (1983).  However, when the proffered speech addresses a matter of personal interest, i.e., when it involves "internal personnel disputes or complaints about an employer's performance," it falls outside of the scope of First Amendment protection.  Brandenburg v. Hous. Auth. of Irvine, 253 F.3d 891, 898 (6th Cir. 2001) (quotation omitted).  Second, Whittie must prove that his interest in taking up the matter of public concern outweighs Defendants' interests, as employers, "in promoting the efficiency of the public services it performs through its employees."  Pickering v. Bd. of Educ. of Township High Sch. Dist., 205, 391 U.S. 563, 568 (1968).  "Whether speech addresses a matter of public concern is a question of law."  Banks v. Wolfe County Bd. Of Educ., 330 F.3d 88, 892 (6th Cir.2003).  Cockrel v. Shelby County Sch. Dist, 270 F.3d 1036, 1048 (6th Cir. 2001).

If Whittie is able to establish a prima facie case of retaliation, "the burden of persuasion shifts to the [Defendants] who must show by a preponderance of the evidence that there were other reasons for the adverse action and that the same adverse action would have resulted even if the plaintiff had not engaged in the protected activity at issue."  Leary, 349 F.3d at 898.  "These are issues of fact, however, and may not be decided on a motion for summary judgment unless

the evidence 'is so one-sided that one party must prevail as a matter of law.'" <u>Boger v. Wayne County</u>, 950 F.2d 316, 322-23 (6th Cir. 1991).

          a.     <u>Whittie's speech is constitutional protected</u>.

             (1)     Speech vs. conduct

As initial matter, it must be noted that the parties have conflicting views on the scope of this lawsuit. Whittie predicates his retaliation claim on both disciplinary proceedings. Defendants, in contrast, submit that only the second disciplinary proceeding regarding the email is properly invoked in this suit. Thus, under Defendants' view, no protected speech is implicated because Whittie was terminated for the action of sending the email, rather than for the email's content.

By focusing solely on the ultimate termination, Defendants have disregarded not only the theory of Whittie's retaliation claim, but also the protection afforded to government employees by the First Amendment.[2] In this lawsuit, Whittie alleges that Defendants retaliated against him by disciplining him after <u>both</u> disciplinary proceedings. Defendants have failed to proffer a reason for accepting their assertion that the retaliation definitively stopped after the first disciplinary hearing. Indeed, there is a strong inference that the retaliation continued since the second disciplinary action was an outgrowth of the first. Moreover, the values of the First Amendment would not be served by focusing only on Whittie's action of sending the email, especially when his email complained about Defendants' attempt in the first hearing to curtail his

---

[2] Nevertheless, Defendants' argument that Whittie was terminated solely for the action of sending the email may be considered during the second stage of the retaliation analysis. That is, Defendants' current argument may be considered to be part of their alternative explanation for Whittie's termination.

constitutional rights. Indeed, the retaliation cause of action was designed specifically to prevent attempts, such as those alleged in this case, by a government employer to chill an employee's speech.

(2) Public Concern

Whittie requests the Court to find as a matter of law that his speech touched on a matter of public concern. He submits that even if his speech was "mixed" and involved both public and private concerns, it is protected to the extent that the constitutionally protected portion led to his suspension and termination. Defendants concede that some of the information that Whittie posted on his website touched upon matters of public concern. See Defs.' Resp. Br. at 1. However, Defendants contend that no protected speech underlies the instant dispute because Whittie's discipline was based on his violation of the police department's insubordination and confidentiality policies, rather than on his expressive activities. Defendants argue, in the alternative, that content of his email did not contain protected speech because it contained personal opinions and objections regarding the hearing.

The Court finds that Whittie's muckraking activities are entitled to First Amendment protection because they relate to matters of "political, social, or other concern to the community." Connick, 461 U.S. at 146. The record evidence indicates that the "content, form, and context" of Whittie's speech, Connick, 461 U.S. at 146-47, involves "something that [was] a subject of legitimate news interest; that [was], a subject of general interest and of value and concern to the public at the time of publication." City of San Diego v. Roe, __U.S.__, 125 S.Ct. 521, 525-26 (2004). Whittie's activities sought "to develop informed opinions" by disclosing evidence that high ranking city officials had engaged in improper conduct. Therefore, the

information contained on his website and in the Shaya report substantially concerned "issues about which information is needed or appropriate to enable the members of society to make informed decisions about the operation of their government." Brandenburg, 253 F.3d at 893. See also Solomon v. Royal Oak Township, 842 F.2d 862, 865 (6th Cir. 1988) (holding that "speech disclosing public corruption is a matter of public interest and therefore deserves constitutional protection").

Whittie's email discussing the first disciplinary hearing also addresses a matter of public concern. Viewed in a vacuum, a strong argument could be made that the email only addresses a matter of personal interest, i.e., how Doyle's personnel decision affected Whittie. See Barnes v. McDowell, 848 F.2d 725 (6th Cir. 1988) (distinguishing between matters of workplace concern and matters of public concern). However, a closer review of both the context and the content of the email shows that it falls within the ambit of the First Amendment. First, it is impossible to divorce the second disciplinary action from the first. The email is clearly a continuation of Whittie's discussion of the Shaya report and the retaliation he received as a result of his muckraking activities. Second, the email discusses how the disciplinary actions affect not only Whittie, but also his ability to inform the public through his website and his correspondence with public officials. Whittie was justified in taking issue with Doyle's broad order prohibiting him from contacting government officials and the public.[3] Indeed, the First Amendment retaliation cause of action was designed to prevent such attempts by high-ranking officials to silence public employees. As recently stated by the Supreme Court:

---

[3] Although the legality of Chief Doyle's gag order is questionable, the Court makes no ruling on either the order or the department's general confidentiality policies.

> Underlying the decision in Pickering is the recognition that public employees are often the members of the community who are likely to have informed opinions as to the operations of their public employers, operations which are of substantial concern to the public. Were they not able to speak on these matters, the community would be deprived of informed opinions on important public issues. The interest at stake is as much the public's interest in receiving informed opinions as it is the employee's own right to disseminate it.

City of San Diego, 125 S.Ct. at 524. Therefore, Whittie's email falls within the concept of public concern since many citizens would have taken an interest in the police department's attempts to silence a vocal police officer who had recently disclosed official misconduct.[4] See McMurphy v. City of Flushing, 802 F.2d 191, 196 (6th Cir. 1986) (noting that the public has a strong interested in the operation of a police department and efforts to give public exposure to expose misconduct).

(3)   Pickering Balancing

Having found that Whittie's speech clearly touched upon a matter of public concern, the Court must now determine whether his "interest in making such statements outweighs the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." Pickering, 391 U.S. at 568. Since Whittie's speech "substantially involve[d] matters of public concern,…[D]efendants will have to make a stronger showing that their interests in regulating [his] speech outweighed [his] interest in speaking." Cockerel v. Shelby County School District, 270 F.3d 1036, 1053 (6th Cir. 2001).

---

[4] Whittie has submitted a variety of newspaper articles and letters to the editor indicating that the public *did* take great interest in the police department's attempts to silence him. For example, a local newspaper published front page articles chronicling the events underlying this lawsuit entitled "DPW Chief Suspended on felony conviction: Cop reprimanded for investigation that led to dismissal," and "Whitsleblower cop fired: Insubordination cited in cause for dismissal." See Pl.'s Mtn. Br., Ex. 10. Similarly, a regional publication contained an article entitled "Busting a whistleblower: Hamtramck's crusading cop faces disciplinary hearing." Id.

On the one hand, the Pickering balancing weighs heavily in Whittie's favor. See Solomon v. Royal Oak Township, 842 F.2d 862, 866-867 (6th Cir. 1988). It is undisputed that he disclosed accurate information about the misconduct of high-level officials. Cf. McMurphy v. City of Flushing, 802 F.2d 191, 197-98 (6th Cir. 1986) (finding that police officer's *false* statements were entitled to less weight under Pickering). Whittie's consistent attempts to expose this corruption is "deserving of vigilant protection by the First Amendment." Solomon, 842 F.2d at 866 (citing O'Brien v. Town of Caledonia, 748 F.2d 403, 407 (7th Cir. 1984)).

On the other hand, Defendants have failed to produce evidence of insubordination or disruption that would tip the balancing in their favor. Ordinarily, a police department should be afforded great leeway in disciplining insubordinate police officers. Nevertheless, it is not a self-evident proposition that an officer who defies a Police Chief's order during a disciplinary hearing has committed an act of subordination that threatens the efficiency of the police department. Defendants thereby fail to produce evidence that the threat of insubordination in this case was so great as to outweigh the public's interest in an informed discussion about the official misconduct and the attempts to silence Whittie. Solomon, 842 F.2d at 866-67.

Contrary to Defendants' position, the bulk of the evidence indicates that the concern for maintaining discipline was more hypothetical than actual. There is reason to believe that Whittie's whistleblowing activities did not cause any disruption at the Hamtramck Police Department because, at the time of the disciplinary hearings, the department tolerated whistleblowing activities by other officers. For instance, the department tolerated a letter sent by Officer David Donnell that refers to Turner as a hypocrite who "persist[s] in telling half truths." Pl.'s Resp. Br., Ex. 16. Furthermore, Doyle testified that when he gave the gag order before the

first hearing he did not have a specific harm in mind.  See Pl.'s Mtn. Br., Amended Ex. 2; Defs.' Resp. Br., pp. 9-11.  Accordingly, whether disclosing content of the hearing would be "harmful or not never crossed [his] mind."  Id.  Given this lack of evidence, the Court is not in a position

> to speculate as to what the employer might have considered the facts to be and what concerns about operational efficiencies it might have had, once the record shows what those concerns really were.  To put the point another way, this is not like "rational basis" review of state legislation, under which it is enough to imagine rational underpinning of the law the legislature chose to enact.  First Amendment rights cannot be trampled based on hypothetical concerns that a governmental employer never expressed.

Gustafson v. Jones, 290 F.3d 895, 909-910 (7th Cir. 2002).  Since Defendants have done little more than identify a hypothetical concern, they have failed to carry their burden "to make a particularly strong showing that [Whittie]'s speech interfered with workplace functioning." Leary, 228 F.3d at 737-38.

          b.      <u>Whittie suffered two adverse employment actions</u>.

It is beyond question that Whittie suffered two separate adverse employment actions when he was suspended and ultimately terminated.  As previously discussed, these disciplinary measures were an immediate reaction to Whittie's speech and therefore caused him "to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in the protective conduct."  Leary, 288 F.3d at 737.

          c.      <u>There is an issue of material fact as to whether the decision to suspend and terminate Whittie was motivated by Whittie's speech</u>.

Whittie has produced sufficient evidence to create a triable issue as to whether the decisions to suspend and terminate him were substantially motivated by his speech.  A jury could find by a preponderance of the evidence that Doyle's decision to terminate Whittie was

-14-

substantially motivated by Whittie's muckraking activities. Cockrel, 270 F.3d at 1056. Contrary to Defendants' assertion that his termination was based solely on his act of sending the email, the evidence indicates that the content of the email was considered by Doyle. In fact, Doyle sent a memorandum to the union president stating that Whittie was disciplined because of "the contents of the e-mail." See Pl.'s Mtn. Br., Ex. 1.

          d.      Defendants have not produced sufficient evidence of their alternative explanation to warrant summary judgment.

Since Whittie "has successfully established for purposes of the summary judgment the three elements of [his] First Amendment retaliation claim, the burden of persuasion shifts" to Defendants. Cockrel, 270 F.3d at 1056. As Defendants are the moving party and bear the ultimate burden of persuasion on this issue, they must establish that "the evidence is such that *every* reasonable juror would conclude that [they] have met their burden of showing that [Whittie] would have been terminated even had [he] not" voiced his opinion on the website and in the email. Id. 1057. Since the viability of an employer's alternative explanation is a factual issue, and Defendants have failed to produce overwhelming evidence in support of their position, summary judgment must be denied.

### 3. Unconstitutional Custom or Policy

A municipality "cannot be held liable under § 1983 on a respondeat superior theory." Monell v. Dept of Soc. Servs., 436 U.S. 658, 694(1978). However, a municipality may be held liable under § 1983 when a city's policy or custom caused the injury or was the moving force behind the constitutional violation. Id. Municipal liability may arise with regards to an employment decision provided that the decisionmaker "possesses final authority to establish municipal policy with respect to the action ordered." Pembaur v. City of Cincinnati, 475 U.S.

-15-

469, 481 (1986) (footnote omitted). "Final policymaking authority over a particular subject area does not vest in an official whose decisions in the area are subject to meaningful administrative review." Scala v. City of Winter Park, 116 F.3d 1396, 1399 (11th Cir. 1997).

Whittie contends that the City of Hamtramck is liable for the alleged violation of his First Amendment rights because the violation took place pursuant to a policy or custom. He believes that liability attaches to Hamtramck because James Doyle, as police chief, had final authority to establish municipal policy. In response, Defendants argue that Whittie has failed to identify a causal connection between the discipline proceedings and the exercise of his constitutional rights. The Court finds that Whittie's unconstitutional custom or policy claim fails for two reasons. First, Whittie has failed to show that Doyle was exercising his policy-making authority when ruled on the disciplinary action. See Crowley v. Prince George's County, 890 F.2d 683, 685-87 (4th Cir. 1989) (finding that a county police chief is not necessarily a final policymaker). It is uncontested that Doyle's disciplinary decisions are reviewable by an arbiter selected under the terms of the department's collective bargaining agreement. Indeed, in the instant case, both of Doyle's decisions were modified by Arbiters Sperka and Dobry, and Whittie was reinstated to his former position.

Second, Whittie has not articulated how the two disciplinary actions created a policy or custom of retaliation against whistleblower officers. Whittie is correct that state liability attaches when a constitutional injury results from the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." Monell, 436 U.S. at 694. However, these two disciplinary actions, by themselves, are insufficient, to demonstrate that Hamtramck has adopted practices "so permanent

and well settled as to constitute a 'custom or usage' with the force of law." Monell, 436 U.S. at 691 (citation omitted). That is to say, Whittie has failed to demonstrate that Doyle acted to create a retaliation policy that would "control decisions in later situations." Pembaur, 475 U.S. at 481. In fact, the record evidence indicates that Doyle tolerated whistleblowing activity by at least two other officers who wrote critical letters that were published by a local newspaper. Therefore, Whittie's unconstitutional policy or custom claim must be dismissed. See Millspaugh v. County Dept. of Pub. Welfare, 937 F.2d 1172, 1174 (7th Cir. 1991) (affirming summary judgment where plaintiffs failed to identify any unconstitutional policy).

### D. State Constitutional Claims

Whittie concedes that Count III of his complaint, asserting state constitutional rights, "should be dismissed unless this Court finds that [he] has no claim for violation of his federal constitutional rights." As the Court has found that Whittie has properly asserted a First Amendment retaliation claim, Count III is hereby dismissed.

### E. Whistleblower Protection Act ("WPA") Claims

The WPA is a remedial statute and thus should be liberally construed in favor of public employees who are willing to risk adverse employment consequences as a result of whistleblowing activities. Dolan v. Continental Airlines/Continental Express, 454 Mich. 373, 378 (1997). To establish a prima facie violation of the WPA, a plaintiff must show that (1) he was engaged in a protected activity as defined by the WPA, (2) he was discharged, and (3) a causal connection existed between the protected activity and the discharge. Chandler v. Dowell Schlumberger, Inc., 456 Mich. 395, 399 (1998).

Defendants assert two arguments against Whittie's WPA claims. First, Defendants

contend that he will be unable to establish a causal link between his suspension and his alleged protected activity. Second, Defendants argue that Whittie's insubordination creates a legitimate, non-discriminatory justification for the disciplinary actions.

As with Whittie's retaliation claim, there is sufficient evidence of a violation of the WPA to resist summary judgment. The record evidence creates a strong inference that both disciplinary proceedings were initiated in response to Plaintiff's speech. For instance, Doyle referenced the content of both the website and the email when justifying his decisions. The same evidence creates a triable issue of material fact as to whether Defendants would have suspended and terminated Whittie even if he had not engaged in protective activity. Therefore, summary judgment on this Count must be denied.

## V.  CONCLUSION

For the above reasons, the Court grants in part and denies in part both motions for summary judgment. Whittie's state constitutional claims and his § 1983 unconstitutional custom or policy claim are hereby **DISMISSED**. However, his § 1983 First Amendment retaliation and WPA claims are permitted to proceed in a manner consistent with this opinion.

**IT IS SO ORDERED.**

s/Mariannie O. Battani<br>
MARIANNE O. BATTANI<br>
UNITED STATES DISTRICT JUDGE

**CERTIFICATE OF SERVICE**

Copies of this Order were mailed to Gary T. Miotke, John C. Clark, and Frederick Schmoll, on this date JUNE 21, 2005, by ordinary mail and electronic filing.

<u>s/Bernadette M. Thebolt</u>
CASE MANAGER
